IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| DINO DEMARIO, *et al.* <br><br> **Plaintiffs** <br><br> v. <br><br> ANTHONY LAMADRID-MALDONADO, *et al.* <br><br> **Defendants** | **CIVIL NO.** 16-2897(RAM) |

OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, District Judge

This matter comes before the Court on co-defendants the Municipality of Hormigueros (the "Municipality" or "Hormigueros") and Triple S Propiedad, Inc.'s ("Triple-S"), (collectively "Defendants") motion for summary judgment. (Docket No. 250). Having reviewed the parties' submissions, the Court **GRANTS** Defendants' request for summary judgment. (Docket Nos. 250, 263, and 278).

I.   BACKGROUND

Dino DeMario and Cheryl Steele (collectively "Plaintiffs") are the parents of the late Nicholas DeMario. (Docket No. 99 ¶¶ 3-4). On November 1, 2015, Nicholas DeMario was assisting his friends with pushing their vehicle, a Mazda Protege with license plate number 1KG-492, which had suffered a mechanical breakdown on a road in the Municipality. Id. ¶ 16. Anthony Lamadrid-Maldonado

("Lamadrid") was driving a Mitsubishi Eclipse with license plate number GLG-871 in the same direction. Id. ¶ 17. Lamadrid's Mitsubishi hit the rear end of the Mazda and Nicholas DeMario was pronounced dead at the scene. Id.

On October 31, 2016, Plaintiffs filed a lawsuit against Lamadrid, the Municipality, the Puerto Rico Electric Power Authority ("PREPA"), the Puerto Rico Highway and Transportation Authority ("PRHTA"), and unnamed insurance companies, seeking emotional damages as well as medical and funeral expenses caused by the loss of their son. (Docket No. 1). Plaintiffs subsequently filed three (3) amended complaints incorporating as co-defendants various insurance companies, including Triple-S. (Docket Nos. 2 ¶ 10; 61 ¶¶ 11-12; 99 ¶ 13).[1]

Essentially, Plaintiffs assert the street light poles in the area where the accident occurred were not energized. (Docket No. 99 ¶ 26). Plaintiffs further allege these street light poles were under the jurisdiction, ownership, care, custody and control of the Municipality, PREPA, and the PRHTA. Id. Thus, they maintain said co-defendants negligently failed to maintain the street light poles functional and are thereby liable for their son's death. Id. ¶¶ 29-30.

---

[1] Accordingly, Plaintiffs' *Third Amended Complaint* at Docket No. 99 is the operative complaint.

Defendants filed a motion for summary judgment. (Docket No. 250). Defendants assert the area where the accident occurred corresponded to the PRHTA's construction project titled Project AC-200213 ("Project AC-200213" or "Project"). Id. at 15-16. Defendants posit that the Municipality did not have control or ownership of the Project, and thus had no obligation to provide illumination to the area of the accident. Id.

Plaintiffs filed an *Opposition to Motion for Summary Judgment*. (Docket No. 263). They aver that the Municipality requested, and ultimately received, authorization from the PRHTA to energize the public lighting in a portion of the Project. Id. ¶¶ 3-4. Moreover, the Municipality reached an agreement with PREPA for the wiring of 12 light poles. Id. ¶ 5. In light of this, Plaintiffs maintain that the Municipality made a unilateral declaration of intention and had a subsequent obligation regarding the energization of the Project or compensate for damages caused by failing to do so. Id. ¶¶ 10-14.

Lastly, Defendants replied to Plaintiffs' opposition. (Docket No. 278). Therein, Defendants maintain that although it was not the Municipality's obligation, it illuminated the intersection of Roads 319 and 344, which did not cover the area of the accident. Id. at 2-3. Furthermore, Defendants argue that the elements

required for a unilateral declaration of intention are not present. Id. at 3-7.

## II. LEGAL STANDARD

A motion for summary judgment is governed by Fed. R. Civ. P. 56(a). Summary judgment is proper if the movant shows that (1) there is no genuine dispute as to any material fact; and (2) they are entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008). A fact is considered material if it "may potentially 'affect the outcome of the suit under governing law.'" Albite v. Polytechnic Univ. of Puerto Rico, Inc., 5 F. Supp. 3d 191, 195 (D.P.R. 2014) (quoting Sands v. Ridefilm Corp., 212 F.3d 657, 660-661 (1st Cir. 2000)).

The moving party has "the initial burden of demonstrat[ing] the absence of a genuine issue of material fact with definite and competent evidence." Mercado-Reyes v. City of Angels, Inc., 320 F. Supp. 344, at 347 (D.P.R. 2018) (quotation omitted). The burden then shifts to the nonmovant, to present "competent evidence to rebut the motion." Bautista Cayman Asset Co. v. Terra II MC & P, Inc., 2020 WL 118592, at 6* (quoting Méndez-Laboy v. Abbott Lab., 424 F.3d 35, 37 (1st Cir. 2005)). A nonmoving party must show "that

a trialworthy issue persists." Paul v. Murphy, 2020 WL 401129, at *3 (1st Cir. 2020) (quotation omitted).

While a court will draw all reasonable inferences in favor of the non-movant, it will disregard conclusory allegations, unsupported speculation and improbable inferences. *See* Johnson v. Duxbury, Massachusetts, 931 F.3d 102, 105 (1st Cir. 2019). Moreover, the existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." Scott v. Harris, 550 U.S. 372, 379 (2007) (quotation omitted). Hence, a court should review the record in its entirety and **refrain from making credibility determinations or weighing the evidence**. *See* Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135 (2000).

In this District, summary judgment is also governed by Local Rule 56. *See* L. CV. R. 56(c). Per this Rule, an opposing party must "admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts." Id. Furthermore, unless the fact is admitted, the opposing party must support each denial or qualification with a record citation. Id.

Additionally, Local Rule 56(c) allows an opposing party to submit additional facts "in a separate section." L. CV. R. 56(c). Given that the plain language of Local Rule 56(c) specifically

requires that any additional facts be stated in a separate section, parties are prohibited from incorporating numerous additional facts within their opposition. *See* Natal Pérez v. Oriental Bank & Trust, 291 F. Supp. 3d 215, 218-219 (D.P.R. 2018) (quoting Carreras v. Sajo, Garcia & Partners, 596 F.3d 25, 32 (1st Cir. 2010) and Malave-Torres v. Cusido, 919 F.Supp. 2d 198, 207 (D.P.R. 2013)).

If a party opposing summary judgment fails to comply with the rigors that Local Rule 56(c) imposes, "a district court is free, in the exercise of its sound discretion, to accept the moving party's facts as stated." Caban Hernandez v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007). Thus, litigants ignore this rule at their peril. *See* Natal Pérez, 291 F. Supp. 3d at 219 (citations omitted).

### III. FINDINGS OF FACT

To make findings of fact, the Court analyzed Defendants' *Statement of Uncontested Material Facts* (Docket No. 250-1) and Plaintiffs' *Opposing Statement of Material Facts* (Docket No. 263-1). After only crediting material facts that are properly supported by a record citation[2] and uncontroverted, the Court makes the following findings of fact:[3]

---

[2] Any supporting documents not in the English language and lacking a certified English translation were not considered. *See* L. CV. R. 5(c).

[3] References to a specific Finding of Fact shall be cited in the following manner: (Fact ¶ _).

A. **The accident**

1. On November 1, 2015 at approximately 4:17 a.m., there was an accident at the Exit of Road #2 at Km. 162.7 in Hormigueros. (Docket No. 250-1 ¶ 1).

2. The accident involved two vehicles: (1) a 2000 Mitsubishi Eclipse, license plate number GLG-871, driven by co-defendant Anthony Lamadrid-Maldonado; and (2) a 1991 Mazda Protege, license plate number IKG-492 driven by Milaiza Martiz-Cardona. (Docket Nos. 250-1 ¶ 1; 266-1).

3. As a result of the accident, Nicholas DeMario, who was assisting to push Milaiza Martiz-Cardona's Mazda after it suffered a mechanical breakdown, died at the scene. (Docket No. 250-1 ¶ 3).

B. **Eng. Ivelisse Pérez's Deposition Testimony**

4. On April 16, 2018, Eng. Ivelisse Pérez ("Eng. Pérez"), an engineer for the PRHTA for approximately 27 years, was deposed. (Docket No. 250-1 ¶ 5).

5. Eng. Pérez served as a regional director for the PRHTA from February 2009 through June 2012. Id. ¶ 7.

6. As a regional director, she had knowledge of what was going on in different PRHTA projects. Id. ¶ 8.

7. Eng. Pérez testified that during her tenure as a regional director, the PRHTA's construction project AC-200213

("Project AC-200213" or the "Project") was in transition from construction to liquidation or closeout. Id. ¶ 7.

8. Project AC-200213 encompassed the area where the accident occurred. Id. ¶ 6.

9. The plans for the Project included installing and wiring light posts. Id. ¶ 9.

10. Eng. Pérez testified that the Project was never energized by PREPA. (Docket No. 250-3 at 8, 10-11).

11. Project AC-200213 was not energized in part because the wiring system installed was stolen during the Project's construction, and because work regarding some substations was not performed. (Docket Nos. 250-1 ¶¶ 11-13; 250-3 at 10).

12. The PRHTA did not restore the stolen cables because it did not reach an agreement with the contractor. (Docket No. 250-1 ¶ 15).

13. Eng. Pérez did not know why the PRHTA did not solve the issue to energize the Project but noted it was a determination for upper management. Id. ¶ 14.

14. She further explained that during the construction phase, the PRHTA is the custodian of the project and once construction is over and the final inspection is conducted, the Department of Transportation and Public Works ("DTOP" for its Spanish

acronym) becomes the custodian for the road and is responsible for its maintenance. Id. ¶¶ 16-17.

C. **Yaritza Cordero's Deposition Testimony**

15. On July 17, 2018, PRHTA employee Yaritza Cordero ("Cordero") was deposed. Cordero began working as a project administrator at the Mayagüez regional offices in 2002 and handles the construction of roads, bridges, signing and emergency projects. (Docket Nos. 250-1 ¶ 19; 250-4 at 4).

16. She worked on the process of liquidation for Project AC-200213. (Docket Nos. 250-1 ¶ 20; 250-4 at 6).

17. Cordero testified that if vandalism occurs in a project, the contractor, who is required to have the proper insurance policy, is supposed to file an insurance claim and remains responsible for any vandalism that occurs to the material used while the project is underway. (Docket No. 250-1 ¶¶ 21-23).

18. With regards to the Project, Cordero testified that the contractor installed the cable work to power the illumination system but it was stolen. The contractor had insurance and was asked to cover the reinstallation, but the cables were stolen more than once. The contractor ultimately submitted a new proposal with new numbers because the cost of cable had increased. (Docket Nos. 250-1 ¶¶ 24-25; 250-4 at 14-15).

19. The PRHTA did not accept the new price because it was bloated and thus did not reach an agreement with the contractor. (Docket No. 250-1 ¶¶ 26, 28).

20. She testified that when she entered the Project, she was informed that the lighting was not going to be installed because the agency was not going to repay for the installation. Id. ¶ 27.

D. **Miguel Santiago-Del Valle's Deposition Testimony**

21. On August 7, 2018, Miguel Santiago-Del Valle ("Santiago"), who had served as PREPA's Inspector General from 2001 until December 30, 2017, was deposed. (Docket Nos. 250-1 ¶ 29; 250-5 at 4)

22. As Inspector General, Santiago was assigned to the Mayagüez region and inspected all the systems that were built to be connected to PREPA. Id.

23. He testified that in his experience, the contractor and the owner are responsible for ensuring that materials are not stolen from the project. (Docket No. 250-1 ¶ 31).

24. The reason provided to Santiago for why the system was not being wired is that the installed cables were stolen and that the contractor submitted a price increase the PRHTA could not accept. Id. ¶ 32.

### E. **The Municipality's Request to Energize an Intersection**

25. In September 2011, the Mayor of Hormigueros, Mayor Pedro J. García Figueroa ("Mayor García") requested authorization from the PRHTA and Eng. Pérez to energize the luminaries located in the intersection of Roads 319 and 344, which could be a single circuit out of the entire project, with the Municipality covering the cost. (Docket No. 184-3 at 60).

26. Eng. Pérez testified that Mayor García's request did not include the area where the accident occurred. Rather, if traveling from Ponce to Mayagüez, the intersection is before the area where the accident occurred. Id. at 65-66.

27. The intersection of Roads 319 and 344 was ultimately energized after the Municipality paid for it. (Docket No. 278-2 at 3).

## IV. ANALYSIS

### A. The Municipality's Liability

The substantive law of Puerto Rico controls in this diversity case. *See* Rivera-Marrero v. Presbyterian Cmty. Hosp., Inc., 2016 WL 7670044, at *1 (D.P.R. 2016) (quoting Summers v. Fin. Freedom Acquisition LLC, 807 F.3d 351, 354 (1st Cir. 2015)) ("Since this is a diversity case, we look to federal law for guidance on procedural matters (such as the summary judgment framework) and to state law (here, [Puerto Rico] law) for the substantive rules of decision.").

Plaintiffs are seeking emotional damages as well as compensation for medical and funeral expenses following the death of their son, allegedly caused in part by co-defendants' negligence. (Docket No. 99 ¶¶ 41, 43). Article 1802 of the Civil Code is Puerto Rico's general tort statute. It states that a person who "causes damages to another through fault or negligence" shall be liable in damages. P.R. Laws Ann. tit. 31, § 5141. "The three essential elements for general tort claims are: (1) evidence of physical or emotional **injury**, (2) a negligent or intentional act or **omission (the breach of duty element)**, and (3) a sufficient **causal nexus** between the injury and defendant's act or omission (in other words, proximate cause)." Vazquez-Filippetti v. Banco Popular de Puerto Rico, 504 F.3d 43, 49 (1st Cir. 2007) (emphasis added) (citing Torres v. KMart Corp., 233 F.Supp.2d 273, 277-78 (D.P.R. 2002)).

The first element is met, as it is uncontested that Plaintiffs have suffered emotional injury following the death of their son. As to the second element, given that Plaintiffs allege the Municipality failed to install, maintain, and energize the light poles related to Project AC-200213, the question is whether an omission or breach of duty occurred. Omissions generate liability under Article 1802 "**when the law imposes a duty of care requiring the defendant to conform to a certain standard of conduct for the**

**protection of others against unreasonable risk**." Zabala-Calderon v. United States, 616 F. Supp. 2d 195, 199 (D.P.R. 2008) (quotation omitted). This duty "may arise in one of three ways: '(1) by a statute, regulation, ordinance, bylaw, or contract; (2) as the result of a special relationship between the parties that has arisen through custom; or (3) as the result of a traditionally recognized duty of care particular to the situation.'" Carr v. Puerto Rico Ports Auth., 2011 WL 1484158, at *3 (D.P.R. 2011) (citing De-Jesus-Adorno v. Browning Ferris Industries of Puerto Rico, Inc., 160 F.3d 839, 842 (1st Cir. 1998)). *See also* Vazquez-Quintana v. Falk, 2018 WL 8838860, at *4 (D.P.R. 2018).

Foreseeability is a central "component of the 'breach' sub-element because a defendant *only* breaches his duty if he acted (or failed to act) in a way that a reasonably prudent person would foresee as creating undue risk." Vazquez-Filippetti, 504 F.3d at 49 (citing Pacheco Pietri v. ELA, 1993 P.R.-Eng. 839, 817 (1993)) (emphasis added). "However, the foreseeability required under art. 1802 does not extend to all imaginable effects resulting from defendant's conduct. This would be tantamount to turning the defendant into an absolute insurer of its acts and omissions." Wojciechowicz v. United States, 576 F. Supp. 2d 241, 272 (D.P.R. 2008), aff'd, 582 F.3d 57 (1st Cir. 2009) (citations omitted).

The uncontested facts reflect that the PRTHA was the owner and custodian of Project AC-200213, which encompassed the area where the accident occurred. (Facts ¶¶ 7, 14). The record shows that the Project was not energized because the wiring system which had been installed by the contractor was stolen on more than one occasion and the PRHTA could not reach an agreement with the contractor the restore them. (Facts ¶¶ 11-12, 18-20, 24). Moreover, for the Municipality to energize certain light poles at the intersection of Roads 319 and 344, it needed authorization from the PRHTA. (Fact ¶ 25). From these facts, it is evident that the agency with ownership and control of the Project while it was under construction was the PRHTA, **and not the Municipality**. Furthermore, following the construction phase of the Project Eng. Pérez testified that **DTOP** would then become the custodian for the road and be responsible for its maintenance. (Fact ¶ 14).

In their *Opposition to Motion for Summary Judgment*, Plaintiffs argue that the Municipality's request to energize a portion of the Project constituted a binding unilateral declaration of intention, which in turn created their duty to illuminate and maintain the area where the accident occurred. (Docket No. 263 ¶¶ 11-12, 14). The Puerto Rico Supreme Court has recognized a uniliteral declaration of intention "as a source of obligation by which a person binds himself or herself on his or

her own will (only relying on his or her interests and desires) to give, to do, or not to do something in favor of another[.]" Ortiz v. P. R. Tel., 162 P.R. Dec. 715, 2004 TSPR 133 (2004), P.R. Offic. Trans. Such a declaration must meet the following requirements to be binding:

> (1) the sole will of the person who intends to be bound; (2) sufficient standing; (3) a clear intention to be bound; (4) an object of the obligation; (5) certainty as to the form and content of the declaration; (6) a suitable juridical act; and (7) the content of the obligation may not be contrary to law, to morals or to public policy.

Id. If the declaration is binding, the person must fulfill it on their own terms and will be required to compensate for any damages caused by violating their obligation to do so or otherwise incurring in fraud, negligence or delay. Id. (quoting Ramírez v. Gautier, 87 P.R.R. 470, 493-494 (1963)); *see also* P.R. Laws Ann. tit. 31, § 3018 ("Those who in fulfilling their obligations are guilty of fraud, negligence, or delay, and those who in any manner whatsoever act in contravention of the stipulations of the same, shall be subject to indemnify for the losses and damages caused thereby."). Even assuming the Municipality's *request for authorization* of a certain portion of the Project, and subsequent acts post authorization, constituted a unilateral declaration of intent, the limited scope of the request **does not** impose liability on Hormigueros in the case at bar. Although it could be concluded

that the Municipality had an obligation to maintain the light poles it received authorization to install, the same were **not located at the site of the accident**. (Facts ¶¶ 25-27). Plaintiffs do not dispute this. Hence, the Municipality's request to install light poles at its own expense to ensure the safety of a specific intersection cannot be construed as a declaration of intent to energize and maintain the *entirety* of Project AC-200213.

In the operative *Complaint*, Plaintiffs mention that various co-defendants failed to comply with the "Illumination Handbook of the Puerto Rico Electric Power Authority, the Federal Highway Administration Rules, the National Highway System Designation Act of 1995, the AASHTO Highway Subcommittee on Design, Federal Highway Act of 1956 and the Federal Highway Administration Lighting Handbook, among others." (Docket No. 99 ¶ 30). However, they subsequently failed to identify any specific statute or regulation imposing upon the Municipality the duty to energize an uncompleted highway project it does not have ownership or control over. Instead, they have invoked in passing doctrines such as estoppel and "one's own acts," requesting that the Court "inject equity principles in the absence of a specific applicable legal provision." (Docket No. 263 ¶¶ 9, 13). Defendants contend this is a tacit admission that there is "an absence of a specific

applicable legal provision" against the Municipality. (Docket No. 278 at 8). The Court agrees.

Lastly, the Court notes that all sources of claims raised by Plaintiff in their *Opposition to Motion for Summary Judgment*, i.e. unilateral declaration of intent, estoppel, and "one's own acts," are not raised in the operative *Complaint*. "It is one matter that the Court must analyze the factual scenario in this case construing the facts, the record, and all reasonable inferences in the light most favorable to the party opposing summary judgment. **Another is to allow the plaintiff to bring forth new never raised allegations.**" Davila Rivera v. Caribbean Refrescos, Inc., 2004 WL 1925477, at *8 (D.P.R. 2004), report and recommendation adopted sub nom. Rivera v. Caribbean Refrescos Inc., 332 F. Supp. 2d 435 (D.P.R. 2004), aff'd sub nom. Davila-Rivera v. Caribbean Refrescos, Inc., 150 F. App'x 3 (1st Cir. 2005) (internal citation omitted) (emphasis added). Plaintiffs have not been able to establish their Article 1802 claim against the Municipality for failing to maintain and energize the area of the accident in the absence of a duty to do so. Therefore, Plaintiffs claims against the Municipality of Hormigueros are **DISMISSED.**

### B. Triple-S' Liability

The Insurance Code of Puerto Rico (the "Insurance Code") governs insurance contracts, known as policies, in Puerto Rico.

*See* P.R. Laws Ann. tit. 26, §§ 1101-1137. Section 2003 of the Insurance Code, known as Puerto Rico's "direct action statute" regulates lawsuits against an insurer, providing in part:

> Any individual sustaining damages and losses shall have, at his option, a direct action against the insurer under the terms and limitations of the policy, which action he may exercise against the insurer only or against the insurer and the insured jointly. The direct action against the insurer may only be exercised in Puerto Rico. The liability of the insurer shall not exceed that provided for in the policy, and the court shall determine not only the liability of the insurer, but also the amount of the loss. Any action brought under this section shall be subject to the conditions of the policy or contract and to the defenses that may be pleaded by the insurer to the direct action instituted by the insured.

P.R. Laws Ann. tit. 31, § 2003(1). This statute "merely permits an injured party to maintain against the insurer the same claim it could pursue against the insured." Torres-Troche v. Municipality of Yauco, 873 F.2d 499, 502 (1st Cir. 1989) (citing Fraticelli v. St. Paul Fire & Marine Ins. Co., 375 F.2d 186 (1st Cir. 1967)). An "insurer's liability arises from and is dependent on its contractual obligations to the insured." Id. Given that the claims against the insured Municipality have been dismissed, claims against its insurer Triple-S are also **DISMISSED.**

**V.    CONCLUSION**

Plaintiffs failed to establish that the Municipality had a duty to install, energize, or otherwise maintain light poles for the area of Project AC-200213 where the accident occurred. Therefore, the Municipality and its insurer Triple-S's *Motion for Summary Judgment* at Docket No. 250 is **GRANTED**. Plaintiffs' claims against the Municipality of Hormigueros and Triple S Propiedad, Inc. are **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

In San Juan Puerto Rico, this 18th day of January 2023.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge