IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

DINO DEMARIO, *et al.*

**Plaintiffs**

**v.**

ANTHONY LAMADRID-MALDONADO, *et al.*

**Defendants**

**CIVIL NO.** 16-2897(RAM)

OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, District Judge

This matter comes before the Court on Dino Demario and Cheryl Steele's (collectively "Plaintiffs") motions for summary judgment against co-defendant MAPFRE-PRAICO Insurance Company ("MAPFRE") seeking declaratory judgment with regards to two different insurance policies issued by MAPFRE. (Docket Nos. 152 and 202). Having reviewed the parties' submissions, the Court **DENIES** Plaintiffs' requests for declaratory judgment.

**I. BACKGROUND**

Plaintiffs are the parents of the late Nicholas DeMario. (Docket No. 99 ¶¶ 3-4). On November 1, 2015, Nicholas DeMario was assisting his friends with pushing their vehicle, a Mazda Protege with license plate number 1KG-492, which had suffered a mechanical breakdown on a road in the Municipality. Id. ¶ 16. Co-defendant Anthony Lamadrid-Maldonado ("Lamadrid") was driving a Mitsubishi

Eclipse with license plate number GLG-871 in the same direction. Id. ¶ 17. Lamadrid's Mitsubishi hit the rear end of the Mazda and Nicholas DeMario was pronounced dead at the scene. Id.

On October 31, 2016, Plaintiffs filed a lawsuit against Lamadrid, the Puerto Rico Electric Power Authority ("PREPA"), the Puerto Rico Highway and Transportation Authority ("PRHTA"), the Municipality of Hormigueros, and unnamed insurance companies seeking emotional damages as well as medical and funeral expenses caused by the loss of their son. (Docket No. 1). Plaintiffs subsequently filed three (3) amended complaints incorporating as co-defendants the Commonwealth of Puerto Rico and various insurance companies, including MAPFRE. (Docket Nos. 2 ¶ 10; 61 ¶¶ 11-12; 99 ¶ 13).[1]

In Plaintiffs' *Third Amended Complaint*, *i.e.*, the operative complaint, they allege that MAPFRE was the liability insurer of co-defendant PRHTA and the Commonwealth of Puerto Rico and is thus "jointly and severally liable for the damages caused" by its insured. (Docket No. 99 ¶¶ 11, 36).

Plaintiffs filed motions for summary judgment against MAPFRE seeking declaratory relief with regards to two different insurance policies issued by MAPFRE (collectively, the "Policies"). First, with regards to the Commercial General Liability Insurance Policy

---

[1] Accordingly, Plaintiffs' *Third Amended Complaint* at Docket No. 99 is the operative complaint.

No. CBP-008869025 (the "Commercial General Liability Policy")
issued by MAPFRE, Plaintiffs ask the Court to declare that: (1)
the Commonwealth of Puerto Rico is a named insured under the
Commercial General Liability Policy; and (2) that the Commercial
General Liability Policy affords coverage for direct actions
asserted by Plaintiffs against MAPFRE as a liability insurer of
the Commonwealth of Puerto Rico. (Docket No. 152 at 9). Second, as
to the Business Protector Occurrence Excess Policy No. CLX-004564
(the "Business Excess Policy") issued by MAPFRE, Plaintiffs ask
the Court to declare that: (1) the PRHTA and the Commonwealth of
Puerto Rico are named insured under the Business Excess Policy;
and (2) that the Business Excess Policy affords coverage for direct
actions asserted by Plaintiffs against MAPFRE as a liability
insurer of the PRHTA and the Commonwealth of Puerto Rico to Each
Occurrence Limit of Insurance of $10,000,000.00. (Docket No. 202
at 11).

    In its responses, MAPFRE concedes that the Commonwealth of
Puerto Rico is an extended named insured pursuant to the terms of
both the Commercial General Liability Policy and the Business
Excess Policy. (Docket Nos. 159 and 222). Nevertheless, MAPFRE
contends that the insurance policies at issue *only* afford coverage
to the PRHTA's operations. Id. Thus, MAPFRE contends that the
Policies do not afford coverage in the case of direct action

against MAPFRE as the liability insurer of the Commonwealth of Puerto Rico. (Docket Nos. 159 at 7; 222 at 11).

The parties filed several replies and sur-replies. (Docket Nos. 167, 176, 177, 230, 234, 237).[2]

Lastly, MAPFRE sought leave to file its own motion for summary judgment to assert that the Policies do not cover damages for mental anguish. (Docket No. 313). Plaintiffs opposed MAPFRE's request on procedural grounds as well as on the merits. (Docket Nos. 314 and 315). The Court ultimately denied MAPFRE's request but noted that the totality of the Policies would be considered. (Docket No. 316).

## II. LEGAL STANDARD

### A. Summary Judgment Standard under Fed. R. Civ. P. 56

Summary judgment is proper under Fed. R. Civ. P. 56(a) if a movant shows "no genuine dispute as to any material fact" and that they are "entitled to judgment as a matter of law." A genuine dispute exists "if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." Alicea v. Wilkie, 2020 WL 1547064, at *2 (D.P.R. 2020) (quotation omitted). A fact is material if "it is relevant to the resolution of a controlling legal issue raised by the motion for

---

[2] Importantly, in one of their supplemental replies, Plaintiffs note that although they previously admitted MAPFRE's fact that the PRHTA does not have jurisdiction, control, or maintenance on the road where the accident occurred, Plaintiffs have since identified evidence that contradicts MAPFRE's assertion. (Docket No. 176).

summary judgment." <u>Bautista Cayman Asset Co. v. Terra II MC & P,
Inc.</u>, 2020 WL 118592, at *6 (D.P.R. 2020) (quotation omitted).

The party moving for summary judgment "bears the initial
burden of showing that no genuine issue of material fact exists."
<u>Feliciano-Munoz v. Rebarber-Ocasio</u>, 2020 WL 4592144, at *6 (1st
Cir. 2020) (citation omitted). Whereas the non-movant may "defeat
a summary judgment motion by demonstrating, through submissions of
evidentiary quality, that a trialworthy issue persists." <u>Robinson
v. Town of Marshfield</u>, 950 F.3d 21, 24 (1st Cir. 2020) (quotation
omitted). However, it "cannot merely 'rely on an absence of
competent evidence, but must affirmatively point to specific facts
that demonstrate the existence of an authentic dispute.'"
<u>Feliciano-Munoz</u>, 2020 WL 4592144, at *6 (quoting <u>McCarthy v. Nw.
Airlines, Inc.</u>, 56 F.3d 313, 315 (1st Cir. 1995)). Solely relying
on "conclusory allegations, improbable inferences, and unsupported
speculation" is insufficient to defeat summary judgment. <u>River
Farm Realty Tr. v. Farm Family Cas. Ins. Co.</u>, 943 F.3d 27, 41 (1st
Cir. 2019) (quotation omitted).

Local Rule 56 also governs summary judgment. *See* L. CV. R.
56. Per this Rule, a nonmoving party must "admit, deny or qualify
the facts supporting the motion for summary judgment by reference
to each numbered paragraph of the moving party's statement of
material facts." <u>Id.</u> The First Circuit has stated that adequately
supported facts "shall be deemed admitted unless controverted in

the manner prescribed by the local rule." <u>Advanced Flexible
Circuits, Inc. v. GE Sensing & Inspection Techs. GmbH</u>, 781 F.3d
510, 520 (1st Cir. 2015) (quotation omitted). Hence, "litigants
ignore Local Rule 56 at their peril." <u>Calderón Amézquita v. Vices</u>,
2019 WL 3928703, at *1 (D.P.R. 2019) (citation omitted).

### III. FINDINGS OF FACT

After analyzing Plaintiffs' Statements of Material Facts
(Docket Nos. 153 and 202-2), MAPFRE's Opposition and Additional
Facts (Docket Nos. 159, 160, 222-1), Plaintiffs' Reply (Docket
Nos. 167-2 and 231), and their corresponding exhibits, and **only
crediting material facts** that are **properly supported by a record
citation and uncontroverted**, the Court makes the following
findings of facts:[3]

1.  The motor vehicle accident that resulted in Nicholas
    DeMario's death occurred on November 1, 2015. (Docket No.
    153 ¶ 2).

**A. The Commercial General Liability Insurance Policy**

2.  At all relevant times herein, MAPFRE had issued a
    Commercial General Liability Insurance Policy No. CBP-
    008869025 (the "Commercial General Liability Policy") to
    the PRHTA, which provides coverage with a $1,000,000 per
    occurrence limit and a $2,000,000 aggregate limit. (Docket

---

[3] References to a Finding of Fact shall be cited as follows: (Fact ¶ _).

Nos. 153 ¶ 1, 159-1, 202-2 ¶ 1).

3.    The Commercial General Liability Policy's "COMMON POLICY RENEWAL DECLARATIONS" identify as named insured the "PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY &/OR ET ALS" and states the COMMERCIAL GENERAL LIABILITY COVERAGE PART as having a $2,339,083 premium (Docket Nos. 153 ¶ 3; 159-1 at 1; 160 ¶ 3).

4.    Per the COMMERCIAL GENERAL LIABILITY RENEWAL DECLARATIONS, the policy period runs from September 28, 2015 to September 28, 2016 and the coverage afforded is $1,000,000 for each occurrence. (Docket Nos. 153 ¶ 4; 160 ¶ 4; 159-1 at 90).

5.    The extended name schedule includes the Commonwealth of Puerto Rico, among other Puerto Rico government entities, as a named insured under the Commercial General Liability Policy. (Docket Nos. 153 ¶ 5; 160 ¶ 5; 159-1 at 148).

6.    SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS provides that:

>    Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies
>
>    a. As if each Named Insured were the only Named Insured; and
>
>    b. Separately to each insured against whom claim is made or "suit" is

brought.

(Docket Nos. 153 ¶ 6; 160 ¶ 6; 159-1 at 133).

7.  The COMMERCIAL GENERAL LIABILITY RENEWAL DECLARATION
    provides coverage for:

> LOCATION OF ALL PREMISES YOU OWN, RENT OR
> OCCUPY:
>
> LOC # 1: Refer to Endorsement B for
> Property Schedule
>
> LOC #2: Anywhere in the Island of Puerto
> Rico

(Docket No. 159-1 at 90; 167-2 ¶ 1).

8.  Endorsement B of the Commercial General Liability Policy
    contains a property schedule listing all locations for
    which commercial general liability coverage is provided
    and includes "Anywhere in the Commonwealth of Puerto Rico"
    as an insured location. (Docket Nos. 153 ¶ 7; 160 ¶ 7;
    159-1 at 101).

9.  The COMMERCIAL GENERAL LIABILITY RENEWAL DECLARATION lists
    LOC CLASSIFICATION 1 of "Streets, Roads, Highways or
    Bridges - existence and maintenance hazard only." (Docket
    Nos. 153 ¶ 9; 160 ¶ 9; 159-1 at 91).

10. Pursuant to the COMMERCIAL GENERAL LIABILITY COVERAGE
    FORM, SECTION I, COVERAGE A – BODILY INJURY AND PROPERTY
    DAMAGE LIABILITY'S Insuring agreement, MAPFRE shall "pay
    those sums that the insured becomes legally obligated to

pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. For the insurance to apply, the bodily injury or property damage must be "caused by an 'occurrence' that takes place in the 'coverage territory[.]'" (Docket Nos. 153 ¶ 11; 160 ¶ 11; 159-1 at 121).

11. SECTION I, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY'S Insuring agreement also notes that "[d]amages because of 'bodily injury' include damages claimed by any person or organization for care, loss of services or death resulting at any time from the 'bodily injury'." (Docket No. 159-1 at 121).

12. Per SECTION V – DEFINITIONS of the Commercial General Liability Policy, "Bodily Injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Id. at 133.

13. Pursuant to SECTION V – DEFINITIONS of the Commercial General Liability Policy, "'[o]ccurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Docket Nos. 153 ¶ 12; 160 ¶ 12; 159-1 at 148)

14. According to SECTION V – DEFINITIONS of the Commercial General Liability Policy, "'Coverage territory' means, in

pertinent part and redundantly, the United States of America (including its territories or possessions) and Puerto Rico." (Docket Nos. 153 ¶ 13; 160 ¶ 13; 159-1 at 133).

## B. The Business Protector Occurrence Excess Policy

15. At all relevant times, MAPFRE had also issued a Business Protector Occurrence Excess Policy No. CLX-004564 (the "Business Excess Policy"), with a Limit of Insurance for Each Occurrence of $10,000,000.00; a Policy Aggregate Limit of $10,000,000.00; a Self-Insured Retention of $10,000.00 for Each Occurrence not covered by Underlying Insurance; and a Schedule of Underlying Insurance with MAPFRE's Commercial General Liability Policy. (Docket Nos. 202-1; 202-2 ¶ 2).

16. The Business Excess Policy identifies the named insured as "PUERTO RICO HIGHWAY & TRANSPORTATION AUTHORITY &/OR ETALS." (Docket No. 202-2 ¶ 3).

17. The Business Excess Policy has a Policy Period form September 28, 2015 to September 28, 2016. Id. ¶ 4.

18. The Business Excess Policy's business description is "AUTORIDAD DE TRANSPORTACION Y CARRETERAS (GOBIERNO)". (Docket No. 202-1 at 3).

19. Pursuant to the Business Excess Policy Change Number A, affecting the Commercial Umbrella coverage part, Tort

Endorsement, MAPFRE agrees "that it will not use, either in the adjustment of claims or in the defense of suits against the Insured, the immunity of the Insured from Tort Liability unless requested by the Insured to interpose such defense." (Docket Nos. 202-1 at 5; 202-2 ¶ 5).

20. Pursuant to the Business Excess Policy Change Number A, affecting the Umbrella Policy, the Extended Named Insured is: "Puerto Rico Highway & Transportation Authority &/or Tren Urbano &/or Commonwealth of Puerto Rico &/or Department of the Treasury c/o Bureau of Public Insurance and/or any subsidiary, associated, affiliated, newly acquired or controlled corporation and/or company and/or individuals as now or hereafter [may] be constituted, or for which the named insured is responsible for placing insurance and for which coverage is not otherwise specifically provided." (Docket Nos. 202-2 ¶ 6; 201-1 at 5).

21. Under the EXTENDED NAMED INSURED, the PUERTO RICO HIGHWAY & TRANSPORTATION AUTHORITY and the COMMONWEALTH OF PUERTO RICO, among others, are listed as named insureds under the Business Excess Policy. (Docket No. 202-2 ¶ 7).

22. Per the Business Excess Policy,

> The words "you" and "your" in this policy refer to the named insured shown in the Declarations and all other persons or

> organization qualifying as named
> insureds under the policy. The words
> "we", "us", and "our" refer to the
> company providing this insurance. The
> word "insured" means any person or
> organization qualifying as such under
> SECTION M - WHO IS AN INSURED[.]

(Docket Nos. 202-1 at 16; 202-2 ¶ 9).

23. Pursuant to SECTION III - WHO IS AN INSURED of the Business Excess Policy, if you are designated in the Declarations as an organization other than a partnership, or joint venture, or limited liability company, you are an insured. (Docket No. 202-2 ¶ 11).

24. Pursuant to SECTION I - INSURING AGREEMENTS, in consideration of the payment of premium and in reliance upon representations made when obtaining the Business Excess Policy, MAPFRE agreed to pay on behalf of the insured for "'ultimate net loss'" in excess of the 'retained limit' because of 'bodily injury' or 'property damage' to which this insurance applies[,]" as limited by SECTION IV – LIMIT OF INSURANCE and the enumerated Exclusions within the Business Excess Policy. (Docket Nos. 202-1 at 16-17; 202-2 ¶ 9).

25. SECTION I - INSURING AGREEMENTS, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY specifies that the Business Excess Policy insurance only applies if the "bodily injury" or "property damage" occurs during the policy

period, is caused by an "occurrence," and such "occurrence" takes place in the "coverage territory." (Docket No. 202-2 ¶ 10).

26. SECTION V – CONDITIONS, 2. provides that bankruptcy insolvency or receivership of the insured, the insured's estate or any "underlying insurer" does not relieve MAPFRE of its obligations under the Business Excess Policy. (Docket No. 202-2 ¶ 12).

27. Pursuant to SECTION V – Conditions, 10. Other Insurance, if other valid and collectible insurance is available to the insured for the ultimate net loss covered by the Business Excess Policy, MAPFRE's obligations under the Business Excess Policy are limited as follows:

    a. As this insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis, except such insurance as is specifically purchased to apply in excess of this policy's Limit of Insurance, we will pay only our share of the amount of "ultimate net loss", if any, that exceeds the sum of:

        1. The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

        2. The total of all deductible and self-insured amounts under this or any other insurance.

    b. We will have no duty under Coverages A or B to defend the insured against any

> "suit" if any other insurer has the duty
> to defend the insured against that
> "suit"[.] If no other insurer defends, we
> may undertake to do so but we will be
> entitled to the insured's rights against
> all other insurers.

(Docket Nos. 202-1 at 35; 222 ¶ 3).

28. Per SECTION V – Conditions, 14. Separation of Insureds, establishes that "except with respect to the limit of Insurance, and any rights or duties specifically assigned to the first named insured, this insurance applies: (a) As if each named insured were the only named insured; and (b) Separately to each insured against whom 'claim' is made or 'suit' is brought." (Docket Nos. 202-1 at 35; 202-2 ¶ 13).

29. Pursuant to SECTION VI - DEFINITIONS, 4. "Bodily injury" is defined as "bodily injury, sickness, or disease sustained by a natural person. This includes death, shock, fright, mental anguish, mental injury, or disability which results from any of these at any time." (Docket Nos. 202-1 at 37; 202-2 ¶ 14).

30. Per the Business Excess Policy, the term "'claim' means any demand upon the insured for damages or services alleging liability of the insured as the result of an 'occurrence' or 'offense[.]'" (Docket Nos. 202-1 at 37; 202-2 ¶ 15).

31. "Coverage territory" is defined by SECTION VI –
    DEFINITIONS, as "anywhere in the world if the insured's
    responsibility to pay damages is determined in a "suit"
    on the merits, in the United States of America (including
    its territories and possessions), Puerto Rico or Canada,
    or in a settlement we agree to." (Docket Nos. 202-1 at 37;
    202-2 ¶ 16).

32. Pursuant to Section VI – Definitions, "occurrence" means
    "with respect to 'bodily injury' or 'property damage', an
    accident, including continuous or repeated exposure to
    substantially the same general harmful conditions."
    (Docket Nos. 202-1 at 39; 202-2 ¶ 17).

33. The "Self-insured retention" means the amount in item 4
    of the Declarations of the Business Excess Policy, namely
    $10,000.00 (each occurrence or offense not covered by
    Underlying Insurance). (Docket Nos. 202-1 at 1, 40; 202-
    2 ¶ 18).

34. Per the terms of the Business Excess Policy, a "suit" is
    defined as "a civil proceeding in which damages because
    of 'advertising injury', 'bodily injury', 'personal
    injury' or 'property damage' to which this insurance
    applies are alleged." (Docket Nos. 202-1 at 40; 202-2 ¶
    19).

35. "Retained Limit" means the greater of:

a. The sum of amounts applicable to any "claim" or "suit" from:

i. "Underlying insurance", whether such "underlying insurance" is collectible or not; and

ii. Other collectible primary insurance; or

b. The "self-insured retention"

(Docket No. 202-2 at 40).

36. Pursuant to Section VI – Definitions, 24., "'Ultimate net loss' means the total amount of damages for which the insured is legally liable in payment of 'bodily injury', 'property damage', 'personal injury', or 'advertising injury'[.] 'Ultimate net loss' must be fully determined as shown in Condition 18 – When Loss Payable." (Docket Nos. 202-1 at 41; 202-2 ¶ 20).

37. Per Condition 18 – When Loss Payable, MAPFRE's liability "for any portion of 'ultimate net loss' shall not apply until the insured or any 'underlying insurer' shall be obligated to actually pay the full and complete amount of the 'retained limit'". (Docket No. 202-1 at 36).

C. The PRHTA's Insurance Program Specifications

38. The PRHTA issued its Insurance Program Specifications when requesting bids for insurance of its operations and business for the policy period running from September 28, 2015 through September 28, 2016. (Docket Nos. 222-1 ¶ 7; 222-3 at 2).

39.   The named insured listed in the PRHTA's Insurance Program
      Specifications    is    the    "Puerto    Rico    Highway    &
      Transportation   Authority   &/or   Tren   Urbano   &/or
      Commonwealth of Puerto Rico &/or Department of Treasury
      c/o Bureau of Public Insurance" among other unnamed
      entities.  (Docket No. 222-3 at 2).

40.   The Insurance Program Specifications provide the following
      description of operations: "The Puerto Rico Highway &
      Transportation   Authority   is   a   government   corporation,
      responsible for the betterment of highways & facilitates
      the vehicular movement." (Docket Nos. 222-1 ¶ 8; 222-3 at
      2).

41.   The   Insurance   Program   Specifications   lists   specific
      locations   where   coverage   is   to   be   provided   under   the
      General Commercial Liability Policy. (Docket Nos. 222-1 ¶
      10; 222-3 at 12-13).

42.   While the list includes the PRHTA's premises "anywhere in
      Puerto Rico," the Insurance Program Specification does not
      include other operations of the Commonwealth of Puerto
      Rico or any of its agencies. (Docket Nos. 222-1 ¶ 9; 222-
      3 at 12-13).

## IV. APPLICABLE LAW

### A. Declaratory Judgment

The Declaratory Judgment Act ("DJA") provides that:

> In a case of actual controversy within its
> jurisdiction ... any court of the United
> States, upon the filing of an appropriate
> pleading, may declare the rights and other
> legal relations of any interested party
> seeking such declaration, whether or not
> further relief is or could be sought. Any such
> declaration shall have the force and effect of
> a final judgment or decree and shall be
> reviewable as such.

28 U.S.C. § 2201.

It is an enabling act conferring "discretion on the Courts rather than an absolute right upon the litigant." Prime Venture Corp. v. Fennix Glob. Holdings, Inc., 2020 WL 3244333, at *2 (D.P.R. 2020) (quoting DeNovelis v. Shalala, 124 F.3d 298, 313 (1st Cir. 1997)). The Supreme Court has held that "case of actual controversy" refers to "the type of 'Cases' and 'Controversies' that are justiciable under Article III" of the Constitution. MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007). Thus, the declaration must fall within "the type of relief that Article III allows courts to give—'decree[s] of a conclusive character' adjudicating adverse parties' actual rights and interests." In re: Financial Oversight & Mgmt. Bd. For P.R., 916 F.3d 98, 111 (1st Cir. 2019). Declaratory judgment is favored when the judgment: (1) serves a useful purpose in clarifying and settling the legal

relations at issue, and (2) will terminate and provide relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. *See* Cadillac Unif. & Linen Supply, Inc. v. Cent. Gen. de Trabajadores, 2020 WL 4289389, at *6 (D.P.R. 2020), report and recommendation adopted, 2020 WL 4289365, at *1 (D.P.R. 2020) (citation omitted). It seeks to limit avoidable losses and the unnecessary accrual of damages and to provide a party threatened with liability an early adjudication without waiting until an adversary begins an action after the damage has accrued. Id.

**B. Interpreting Insurance Policies under Puerto Rico Law**

The Insurance Code of Puerto Rico (the "Insurance Code") governs insurance contracts, known as policies, in Puerto Rico. *See* P.R. Laws Ann. tit. 26, §§ 1101-1137. Under said Insurance Code, insurance contracts are to be "construed according to the entirety of [their] terms and conditions as set forth in the policy, and as amplified, extended, or modified by any lawful rider, endorsement, or application attached to and made a part of the policy." Id. § 1125. Generally, "insurance contracts are considered contracts of adhesion that are liberally interpreted in favor of the insured." Metlife Capital Corp. v. Westchester Fire Ins. Co., 224 F. Supp. 2d 374, 382 (D.P.R. 2002) (citing Quiñones Lopez v. Manzano Pozas, 141 D.P.R. 139, 155 (1996) and Rosario v. Atl. Southern Ins. Co., 95 D.P.R. 759 (1968)).

When the Insurance Code fails to provide the "interpretative approach" required for a particular controversy, courts look to the Puerto Rico Civil Code for a supplemental source of law guiding contract interpretation. *See* Marina Aguila v. Den Caribbean, Inc., 490 F. Supp. 2d 244, 248 n.5 (D.P.R. 2007). The Puerto Rico Civil Code dictates that "[if] terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed." P.R. Laws Ann. tit. 31, § 3471. In such cases, "the court should confine itself to a literal application of the unambiguous terms of the contract." Gonzalez v. John Hancock Mut. Life Ins. Co., 927 F.2d 659, 660 (1st Cir. 1991) (internal quotations and edits omitted). "Under Puerto Rican law, an agreement is 'clear' when it can be understood in one sense alone, without leaving any room for doubt, controversies or difference of interpretation[.]" Executive Leasing Corp. v. Banco Popular de Puerto Rico, 48 F.3d 66, 69 (1st Cir. 1995); *see also* Heirs of Ramírez v. Superior Court, 81 P.R.R. 347, 351 (1959). In terms of insurance contracts in particular, the District of Puerto Rico has held that although ambiguities arising from an insurance policy should "be resolved in the manner least favorable to the insurer […] this praxis **does not compel or require courts to interpret a clear, unambiguous clause that favors the insurer in a manner that would benefit the insured**." Metlife Capital Corp., 224 F. Supp. 2d at 382 (emphasis added).

It is worth noting that "[a]mbiguity does not exist simply because the parties disagree about the proper interpretation of a policy provision." <u>Hoffman Garcia v. Metrohealth, Inc.</u>, 246 F. Supp. 3d 527, 530 (D.P.R. 2017). Instead, it "may be found where the policy's language is susceptible to more than one rational interpretation." <u>Id.</u> (quoting <u>Clark School for Creative Learning, Inc. v. Philadelphia Indem. Ins. Co.</u>, 734 F.3d 51, 55 (1st Cir. 2013)). Moreover, whether an insurance policy's terms, conditions, and exclusions are clear and unambiguous is a matter of law for courts to determine. *See* <u>Marina Aguila</u>, 490 F. Supp. 2d at 249 (quoting <u>Littlefield v. Acadia Ins. Co.</u>, 392 F.3d 1, 10 (1st Cir. 2004)).

**C. Puerto Rico's Direct-Action Statute**

Section 2003 of the Insurance Code, known as Puerto Rico's "direct action statute," regulates lawsuits against an insurer. It provides in part:

> Any individual sustaining damages and losses shall have, at his option, a direct action against the insurer under the terms and limitations of the policy, which action he may exercise against the insurer only or against the insurer and the insured jointly. The direct action against the insurer may only be exercised in Puerto Rico. The liability of the insurer shall not exceed that provided for in the policy, and the court shall determine not only the liability of the insurer, but also the amount of the loss. Any action brought under this section shall be subject to the conditions of the policy or contract and to the defenses that may be pleaded by the

> insurer to the direct action instituted by the
> insured.

P.R. Laws Ann. tit. 26, § 2003(1). This statute "merely permits an injured party to maintain against the insurer the same claim it could pursue against the insured." Torres-Troche v. Municipality of Yauco, 873 F.2d 499, 502 (1st Cir. 1989) (citing Fraticelli v. St. Paul Fire & Marine Ins. Co., 375 F.2d 186 (1st Cir. 1967)). In other words, "the direct action statute **does not confer any additional rights against the insurer than those already held by the insured.**" In re San Juan Dupont Plaza Hotel Fire Litig., 789 F. Supp. 1212, 1217 (D.P.R. 1992) (emphasis added). Therefore, an "insurer's liability arises from and is dependent on its contractual obligations to the insured." Torres-Troche, 873 F.2d at 502.

## V. ANALYSIS

### A. Plaintiffs' Requests for Declaratory Judgment

Plaintiffs request that the Court issue declaratory judgment on two distinct grounds. The Court addresses each request in turn.

#### i. Both PRHTA and the Commonwealth of Puerto Rico are named insureds under the Policies

In the case at bar, there is no controversy with regards to the fact that both the PRHTA and the Commonwealth of Puerto Rico are named insureds pursuant to the clear text of both the Commercial General Liability Policy and the Business Excess Policy. (Facts ¶¶ 5, 16-20). Therefore, there is no legal

uncertainty that warrants declaratory judgment for clarification as to whether the PRHTA and the Commonwealth of Puerto Rico are named insureds under the Policy.

> ii. <u>The Court need not determine whether the Policy provides coverage for direct actions</u>

Pursuant to Section 2003 of Puerto Rico's Insurance Code, P.R. Laws Ann. tit. 26, § 2003(1), Puerto Rico is a "direct action" jurisdiction, that allows "an injured party to maintain against the insurer the same claim it could pursue against the insured." <u>Torres-Troche</u>, 873 F.2d at 502. Therefore, there is no legal uncertainty that warrants declaratory judgment for clarification as to whether the Policy allows for direct actions. *See* <u>Cadillac Unif.</u>, 2020 WL 4289389, at *6.

However, in their opposition, MAPFRE contends that Plaintiffs cannot assert a direct cause of action against MAPFRE as the liability insurer of the Commonwealth of Puerto Rico for claims unrelated to the operations of the PRHTA under either of the Policies. (Docket Nos. 159, 222, 234). Construing both Policies "according to the entirety of [their] terms and conditions" as required by the Insurance Code, it is evident that MAPFRE's intent was to ensure the PRHTA's operations, not *all* of the Commonwealth of Puerto Rico's operations, including those unrelated to the PRHTA. (Docket Nos. 159-1, 202-1; Facts ¶¶ 7, 8, 9, 18).

**B. MAPFRE's liability pursuant to the Commercial General Liability Policy**

MAPFRE has proffered two arguments to establish that it is not liable pursuant to the terms of the Commercial General Liability Policy. First, MAPFRE provides a Sworn Statement by Maria I. Ayala Rivera ("Ayala"), the PRHTA's Acting Regional Director for the Western Region – Mayaguez, to assert that the PRHTA lacked "jurisdiction, control or maintenance" of Highway PR-2, Km 162.7 in the Municipality of Hormigueros, *i.e.*, where the fatal accident occurred. (Docket No. 170-1). This sworn statement is contradicted by other evidence on the record. *See* Docket Nos. 310 ¶¶ 7, 8, 12-14, 19, 25; 311 ¶¶ 4, 11, 15, 29, 30, 33, 40. Moreover, it is insufficient to establish that the PRHTA did not own, rent, or occupy Highway PR-2, Km 162.7, which would trigger liability pursuant to the Commercial General Liability Policy. (Fact ¶ 7).

MAPFRE also asserts it cannot be held liable because the Commercial General Liability Policy does not provide coverage for mental anguish under any scenario. (Docket No. 313 ¶ 7). Pursuant to the Commercial General Liability Policy, MAPFRE is obligated to "pay those sums that the insured becomes legally obligated to pay as damages because of **'bodily injury'** or **'property damage'** to which this insurance applies." (Fact ¶ 10). Bodily injury is defined by the Policy as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

(Fact ¶ 12). Moreover, the Commercial General Liability Policy
notes that recoverable "[d]amages because of 'bodily injury'
include damages claimed by any person or organization for care,
loss of services or death resulting at any time from the 'bodily
injury'." (Fact ¶ 11).

Therefore, MAPFRE is correct that the Commercial General
Liability Policy is **silent** as to mental anguish and does not
include it in its definition of "bodily injury" or the damages
that can be recovered because of bodily injury. *Couch on Insurance*,
a leading treatise on insurance law explains that:

> The term "bodily injury," as used in some
> insurance policies, is a narrow and
> unambiguous term that includes only actual
> physical injuries to the human body and the
> consequences thereof, not humiliation, mental
> anguish and suffering, mental pain, or
> emotional distress. Emotional distress
> without accompanying physical injury was found
> not to be "bodily injury" within the meaning
> of a commercial general liability (CGL)
> insurance policy as the policy defined "bodily
> injury" as bodily injury, sickness, or disease
> sustained by a person, and the definition
> seemed to imply that actual physical injury
> was necessary. In other jurisdictions, the
> term "bodily injury" is defined broadly, and
> often included emotional injury.

14 Couch on Ins. 3d § 201:8.

Plaintiffs counter that under Puerto Rico civil law, they can
seek and recover damages for their mental anguish without having
personally suffered physical injuries. (Docket No. 177 ¶¶ 4-5).
While this is true with regards to a general torts cause of action,

the Supreme Court of Puerto Rico has specified that the terms of

an insurance policy dictate whether the coverage extends to mental

anguish claims. When discussing whether a general liability

insurance policy provided coverage for mental anguish, the Supreme

Court of Puerto Rico held:

> [1-2] A Comprehensive General Liability
> Insurance policy is one that "includes all the
> warranties that normally apply to a certain
> risk." J. Castelo, *Diccionario básico de
> seguros* 160, Madrid, Ed. Mapfre (1972). That
> is, not all covered risks are specifically
> enumerated, and insurance is provided for all
> enumerated risks and for any other risk that
> has not been excluded, recognized or
> specified. This does not mean, however, that
> it is an all-risk policy without conditions,
> limitations or exclusions. J. Long and D.
> Gregg, *Property and Liability Insurance
> Handbook* 493 (1965)[sic]
>
> [3-4] This type of policy ordinarily contains
> a single coverage provision for property
> damages and another for bodily injury. **The
> wording of these two provisions is extremely
> important, since it defines the scope of the
> coverage. If the personal injury clause
> provides that physical or bodily injury will
> be compensated, but not so personal injury,
> then coverage will be limited to the former,
> and any other injury such as** libel, **mental
> anguish,** etc., **will not be indemnified.**

Albany Ins. Co. v. Cia. Des. Comercial P.R., 125 P.R. Dec. 421,

P.R. Offic. Trans. (1990) (emphasis added).

In the case at bar, the Commercial General Liability Policy

only provides coverage for bodily injury (in lieu of personal

injury) and without any mention as to mental anguish, emotional

suffering, or any analogous type of injury. Therefore, per the clear and unambiguous terms of the Commercial General Liability Policy, and pursuant to Puerto Rico Supreme Court precedent, this Policy does not provide coverage for Plaintiffs' mental anguish and emotional trauma. Plaintiffs' only potential remaining claims as to MAPFRE under the Commercial General Liability Policy are for reimbursement of funeral and medical expenses for their son in excess of $15,000.00. (Docket No. 99 ¶¶ 41, 43).[4]

## VI. CONCLUSION

In light of the above, Plaintiffs' *Motion for Summary Judgment* at Docket No. 152 and *Motion for Summary Judgment* at Docket No. 202 requesting Declaratory Judgment pursuant to 28 U.S.C. §§ 2201-2 are **DENIED**. Furthermore, Plaintiffs' claims against MAPFRE for their emotional damages and mental anguish pursuant to the Commercial General Liability Policy are also hereby **DISMISSED WITH PREJUDICE**. However, Plaintiffs' claims for reimbursement of funeral and medical costs against MAPFRE in its capacity as insurer of the Commonwealth of Puerto Rico and the PRHTA pursuant to the Commercial General Liability Policy remain pending. The totality of Plaintiffs' claims against MAPFRE in its capacity as insurer of the Commonwealth of Puerto Rico and the PRHTA pursuant to the Business Excess Policy remain pending.

---

[4] The Court notes that the Business Excess Policy expressly provides coverage for mental anguish. (Fact ¶ 29).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 26th day of April 2023.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge